RECORD NO. 09-4603

*In The*
# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## ROBERT FRANKLIN DOYLE, JR.,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## AT BIG STONE GAP

_____

## BRIEF OF APPELLANT

_____

**John E. Jessee**
**JESSEE & READ, P.C.**
**200 West Valley Street**
**Post Office Box 1506**
**Abingdon, Virginia 24212**
**(276) 628-1089**

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION .............................................. 1

ISSUE PRESENTED FOR REVIEW ............................................. 1

STATEMENT OF THE CASE .................................................... 1

STATEMENT OF FACTS .......................................................... 3

SUMMARY OF THE ARGUMENT ............................................ 11

ARGUMENT ........................................................................... 12

    The District Court Erred When it Refused to Grant the
    Defendant's Motion to Suppress Evidence Seized Pursuant to a
    Search Warrant That Lacked Probable Cause and No Good
    Faith Exception Existed ...................................................... 12

    STANDARD OF REVIEW ................................................. 12

    ANALYSIS ...................................................................... 13

    A.    LACK OF PROBABLE CAUSE............................. 13

    B.    NO GOOD FAITH EXCEPTION .......................... 17

        (1)    THE MAGISTRATE WAS MISLEAD BY
                INFORMATION IN AN AFFIDAVIT THAT
                THE OFFICER KNEW WAS FALSE OR
                WOULD HAVE KNOWN WAS FALSE
                EXCEPT FOR THE OFFICER'S RECKLESS
                DISREGARD FOR THE TRUTH................................ 19

i

(2) THE MAGISTRATE WHOLLY ABANDONED HIS DETACHED AND NETURAL JUDICIAL ROLE .......................................................... 22

(3) THE WARRANT WAS BASED ON AN AFFIDAVIT THAT WAS SO LACKING INDICIA OF PROBABLE CAUSE AS TO RENDER OFFICIAL BELIEF IN ITS EXISTENCE ENTIRELY UNREASONABLE ............ 23

CONCLUSION ........................................................... 24

REQUEST FOR ORAL ARGUMENT ...................................... 24

CERTIFICICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Draper v. United States*,
  358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959) ......................... 17

*Illinois v. Gates*,
  462 U.S. 213, S. Ct. 2317, 76 L. Ed. 2d 527 (1983) .............. 14, 15, 17

*Ornelas v. United States*,
  517 U.S. 690 (1996) ........................................................................ 12

*Sgro v. United States*,
  287 U.S. 206, 53 S. Ct. 138, 77 L. Ed. 260 (1932) ............................ 16

*United States v. Amirault*,
  173 F.3d 28 (1st Cir. 1999) ............................................................. 15

*United States v. Harris*,
  403 U.S. 573, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971) ..................... 13

*United States v. Horn*,
  187 F.3d 781 (8th Cir. 1999) ........................................................... 14

*United States v. Humphries*,
  372 F.3d 653 (4th Cir. 2004) ........................................................... 12

*United States v. Johnson*,
  400 F.3d 187 (4th Cir. 2005), *cert. denied*,
  126 S. Ct. 134 (2005) ..................................................................... 12

*United States v. Kemper*,
  375 F. Supp. 2d 551 (E.D. Ky. 2005)........................................... 17, 18

*United States v. Knox*,
  32 F.3d 733 (3d Cir. 1994) .............................................................. 15

*United States v. Lalor*,
     996 F.2d 1578 (4th Cir. 1993) ........................................................... 15

*United States v. Laughton*,
     409 F.3d 744 (6th Cir. Mich. 2005) ................................................... 18

*United States v. Leon*,
     468 U. S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) .................. 19

*United States v. McCall*,
     740 F.2d 1331 (4th Cir. 1984) ........................................................... 16

*United States v. Seidman*,
     156 F.3d 542 (4th Cir. 1998) ............................................................. 12

*United States v. Ventresca*,
     380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965) .................. 16-17

*United States v. Wilhelm*,
     80 F.3d 116 (4th Cir. 1996) ......................................................... 17, 23

*Zurcher v. Stanford Daily*,
     436 U.S. 547, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978) .................... 14

## CONSTITUTIONAL PROVISION

U.S. CONST. amend. IV .............................................................................. 13

## STATUTES

18 U.S.C. § 2252(a)(4)(B) ........................................................................ 15

18 U.S.C. § 2252A(a)(1)......................................................................... 1, 2

18 U.S.C. § 2252A(a)(2)(A) ...................................................................... 1

18 U.S.C. § 2255A(a)(5)(B) ....................................................................... 1

18 U.S.C. § 2252A(b)(1) ........................................................................ 1, 2

iv

18 U.S.C. § 2252A(b)(2) ........................................................... 1

18 U.S.C. § 3231 ..................................................................... 1

18 U.S.C. § 3742(a) ................................................................. 1

28 U.S.C. § 1291 ..................................................................... 1

Va. Code § 18.2-347.1:1 [sic 18.2-3741:1] .............................. 4

**RULE**

Fed. R. App. R. 4 .................................................................... 1

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is an appeal from a criminal judgment in the district court which had jurisdiction pursuant to 18 U.S.C. §§ 2252A(a)(1), 2252A(a)(2)(A), 2255A(a)(5)(B), 2252A(b)(1), 2252A(b)(2), and 3231.  This Court has appellate jurisdiction pursuant to 18 U.S.C. § 3742(a), 28 U.S.C. § 1291, and Rule 4 of the Federal Rules of Appellate Procedure.

Final Judgment was entered by the district court on June 23, 2009 and the Notice of Appeal was timely filed on June 29, 2009.

## ISSUE PRESENTED FOR REVIEW

Whether the District Court Erred When it Refused to Grant the Defendant's Motion to Suppress Evidence Seized Pursuant to a Search Warrant That Lacked Probable Cause and No Good Faith Exception Existed.

## STATEMENT OF THE CASE

The Appellant, Robert Franklin Doyle, Jr., was originally charged in a two-count indictment returned on March 6, 2007 with receipt and possession of child pornography in violation of 18 U.S.C §§ 2252A(a)(2)(A), 2252A(b)(2) and 2255A(a)(5)(B).  J.A. 29-31.  A five-count superseding indictment was returned on September 11, 2007 containing the two original charges in addition to three counts of shipping child pornography in

interstate commerce in violation of 18 U.S.C. §§ 2252A(a)(1) and 2252A(b)(1).  J.A. 50-53.

On August 9, 2007 a Motion to Suppress and Incorporated Memorandum in Support was filed on behalf of Doyle.  J.A. 32-34.  The government filed a Response to Defendant's Motion to Suppress on September 5, 2007 (J.A. 35-42), and on September 10, 2007 a Supplement to Doyle's Motion to Suppress was filed.  J.A. 43-49.

On September 11, 2007 Magistrate Judge Sargent observed the witnesses testify and heard arguments on the Motion to Suppress.  J.A. 54-141.  On September 14, 2007 Magistrate Judge Sargent issued a Report and Recommendation that the Motion to Suppress should be granted.  J.A. 254-270.

On October 5, 2007 the government filed its objections to the Magistrate's Report and Recommendation on the Motion to Suppress.  J.A. 271-291.  On October 22, 2007 a Brief in Support of the Magistrate Judge's Report and Recommendation was filed on behalf of Doyle.  J.A. 292-306.

On January 2, 2008 Senior District Judge Williams issued an opinion and corresponding Order denying the Motion to Suppress.  J.A. 307-332.  An Amended Order was entered on January 3, 2008.  J.A. 333-334.

A jury trial was commenced on December 8, 2008 and concluded on December 10, 2008 when a verdict of guilty on all five counts was returned. J.A. 20-21.  In an Opinion and Order dated June 2, 2009 Chief District Judge Jones denied the post trial motions filed on behalf of Doyle.  J.A. 335-351.

Judgment in a criminal case was entered on June 23, 2009 imposing a total term Two Hundred and Thirty-Five (235) months of imprisonment. J.A. 352-358.

## STATEMENT OF FACTS

This case is based upon images retrieved from the hard drive of a computer that was seized from Doyle's home pursuant to a state search warrant that was issued by Magistrate Jim L. Burke on January 8, 2004 to Captain Charles T. Scott of the Lee County Sheriff's Department.  J.A. 253a. The search warrant was executed by Captain Scott on January 9, 2004.  J.A. 253d.

The following facts are adopted from the Report and Recommendation of Magistrate Judge Sargent, who is the Judge that had the opportunity to assess the demeanor and testimony of those persons actually involved with the search during the underlying suppression hearing. J.A. 271-291.  Citations to these factual findings are referenced to the record of proceedings conducted on September 11, 2007.

The Affidavit for Search Warrant filed with Magistrate Burke was sworn to by Captain Charles Taylor Scott, Lee County Sheriff's Department Chief Investigator, ("Affidavit").     J.A. 253b-253c.   The Affidavit states that a search of the defendant's residence was requested in relation to the offense of possession of child pornography in violation of Virginia Code § 18.2-347.1:1 [sic – should be § 18.2-374.l:1].  See footnote, Magistrate Judge's Report and Recommendation, J.A.255.  The Affidavit states that the things to be searched for were:

> Any and all materials, books, magazines, pictures, videos that are of a sexual nature involving any minor child.  Also any communication system that could be used to facilitate a sexual offense against a child. (computer)

The affidavit states that "[t]he material facts constituting probable cause" were:

> Three minor children have come forward and stated that Robert Doyle, Jr. has sexually assaulted them at the Doyle residence.  One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children.

The affidavit also says:

> I was advised of the facts set forth in this affidavit in whole or in part, by an informer.  This informer's credibility or the reliability of the information may be determined from the following facts:

> Detailed Victim statements of the assault and of the Doyle residence, where victims describe the assailants [sic] bedroom and, vehicle he drives and description of the home.   Which has all been verified by Sheriffs Dept.

At the suppression hearing, Captain Scott testified that he and Lieutenant Fred Rouse, an investigator with the Lee County Sheriff's Office, appeared before Magistrate Burke on January 8, 2004, in an effort to obtain the warrant to search Doyle's home.  J.A. 81, 84, 129.  Both Scott and Rouse testified that Rouse had investigated the allegations that Doyle had sexually assaulted these three minor boys.  J.A. 85, 130.  Scott testified that he had conducted no independent investigation into these allegations or whether the information Rouse had provided him regarding the investigation were true.  J.A. 134.   Rouse testified that he also prepared the Affidavit.   J.A. 91.  Despite these facts, however, both Scott and Rouse testified that Scott, as Rouse's supervisor, had chosen to sign the Affidavit.  J.A. 85, 129.  Rouse testified that Scott chose to do so for "political" reasons because it was an election year and the defendant came from a large influential Lee County family.  J.A. 106-106.  He further stated that the defendant's family had voiced concerns that the investigation of the defendant was being pursued as a personal vendetta by Rouse.  J.A. 85, 88.

Scott, who recently was involved in an ATV accident resulting in a head injury which has affected his memory, testified that he could not remember whether he had read the affidavit before he signed it under oath attesting to its accuracy. J.A. 126-127, 130, 133. In fact, Scott admitted that it was "entirely possible" that he did not read the Affidavit before he signed it because he was fully relying on the investigation performed in the matter by Rouse. J.A. 134. Scott testified that he never personally conducted any interviews with any of the witnesses or victims in the case, although it was possible that he had watched Rouse conduct at least one victim interview from his desk or that he had watched the videotape recordings of one of the victim's interviews. J.A. 130.

Both Scott and Rouse testified that Magistrate Burke had a number of questions concerning the Affidavit as presented. J.A. 86-87, 78. Both men stated that the only question Magistrate Burke asked of Scott was an inquiry as to why he, and not Rouse, had signed the Affidavit. J.A. 119, 131. Both men testified that Rouse, who was never placed under oath by Magistrate Burke, answered the remaining questions, including questions with regard to whether the information contained in the Affidavit was stale. J.A. 90. Scott further testified that, as a law enforcement officer, he knew that a magistrate could not rely on unsworn testimony in determining whether probable cause

existed to issue a search warrant. J.A. 135-138. Rouse admitted that, before this date, he had always been placed under oath before offering oral evidence in support of an affidavit for a search warrant. J.A. 123. He also admitted that, before this date, he had never had a magistrate consider unsworn evidence in support of an affidavit for a search warrant. J.A. 124.

Scott testified that he was the officer who executed the search warrant on Doyle's residence. J.A. 136. A copy of the search warrant return was admitted into evidence at the suppression hearing. J.A. 139. The return shows that officers conducted the search of Doyle's residence on January 9, 2004, and seized a computer, miscellaneous computer disks, paper and photographs and a "lock box." J.A. 94-95. The government asserts that a forensic examination of the hard drive of this computer revealed that it contained numerous images which constitute child pornography, which are the basis of the federal charges against Doyle. J.A. 36.

Rouse testified that in early August 2003, Edward J. Jones came into the Lee County Sheriff's Office requesting to speak to an officer. J.A. 66. Rouse testified that Jones told him that one of his step-nephews, who was a minor, had recently told him that he had been sexually assaulted by Doyle and had watched Doyle sexually assault his younger brother. J.A. 67-68. Rouse referred to this step-nephew as Victim No. 1 and his younger brother

as Victim No. 2.  J.A. 67-68.  Rouse testified that Jones also told him that Victim No. 1 had said that Doyle had showed him nude photos of young boys.  J.A. 67, 69.  Rouse testified that when he informed Captain Scott of Jones' allegation, he was informed that another minor boy, who Rouse referred to as Victim No. 3, had recently made similarly accusations against Doyle.  J.A. 67-68.

Rouse testified that, later in August 2003, he interviewed Victim No. 1, and Victim No. 2 stated that Doyle had sodomized him at Doyle's residence on one occasion.  J.A. 70-71.  Victim No. 1 further stated that he had watched Doyle sodomize his younger brother, Victim No. 2, at Doyle's residence on another occasion.  J.A. 71.  Rouse testified that he also interviewed Victim No. 2 in August 2003, and Victim No. 2 confirmed that he and Victim No. 1 had been taken by Doyle to Doyle's residence on at least one occasion, but he would not say what had occurred.  J.A. 73. Instead, he told Rouse only that his older brother knew what had happened to him.  J.A. 73.

Rouse admitted that neither of these boys ever made any statement to him alleging that Doyle had shown them nude pictures of young boys.  J.A. 73, 98.  He further admitted that neither of these boys was able to identify the date on which these alleged sexual assaults occurred.  J.A. 112-113.

8

Rouse stated that Victim No. 1 did say that these events had occurred when the weather was "cool" and while his family had lived in a trailer park. J.A. 113. Rouse stated that he had determined that the boys' family had resided in an area trailer park from October to December of 2002, and, therefore, he had made the assumption that the assaults by Doyle had occurred during this time frame. J.A. 79, 113.

Rouse stated that he interviewed Victim No. 3 in December 2003, and that Victim No. 3 stated that he, too, had been sodomized by Doyle in an assault similar to the ones described by Victim No. 1. J.A. 79-80, 100. Rouse stated that Victim No. 3 was able to provide a description of the interior of Doyle's residence and bedroom, which Rouse knew to be accurate. J.A. 82-84. Rouse admitted that Victim No. 3 did not make any statement to him regarding Doyle possessing or showing him any nude photographs of young boys. J.A. 94. Rouse also admitted that Victim No. 3 was unable to identify the date of the assault, other than to say that it occurred when it was "cold". J.A. 112, 114-115.

Rouse admitted that, insofar as the Affidavit alleged that [t]hree minor children …stated that…Doyle had sexually assaulted them," it was inaccurate, in that only two of the alleged victims had told him that Doyle had sexually assaulted them. J.A. 104-105. Rouse also admitted that,

9

insofar as the Affidavit stated that "victims describe the assailant [sic] bedroom" it was inaccurate, in that only one victim had described Doyle's bedroom.  J.A. 82, 100-101.  Rouse further testified on cross-examination that he had inaccurately testified in Lee County General District Court at a preliminary hearing held for Doyle on pending sexual assault charges that all three victims had told him that they had been sodomized.  J.A. 95-97, 104-105.  Rouse also admitted that he inaccurately testified at this preliminary hearing by stating that two of the victims had been shown nude pictures of boys by Doyle.  J.A. 89, 98.   Rouse admitted that he was the sole witness who appeared before a Lee County Circuit Court grand jury on January 9, 2004, and offered testimony in support of an indictment returned against Doyle charging with sodomy against these boys with alleged offense dates occurring in October or November 2003 and December 2003, rather than the correct dates of October or November 2002 and December 2002.  J.A. 108-109.

Rouse admitted that the Affidavit on its face contained no statements from which Magistrate Burke could assess the reliability of any information provided to Rouse from Jones, the step-uncle of Victim No. 1.  J.A. 104.  Rouse further admitted that he made no statement to Magistrate Burke regarding the reliability or credibility of Jones.  J.A. 104.  Rouse admitted

that no description was given to Magistrate Burke of the photographs Doyle allegedly showed to one of the victims, other than that information contained on the face of the Affidavit. J.A. 106-107. Rouse further admitted that no information was given to Magistrate Burke that these "pictures of nude children" were ever in Doyle's residence. J.A. 107.

Rouse did testify that he told Magistrate Burke that he had recently completed training in which he had learned that persons who viewed child pornography often collected and retained such material for long periods of time. J.A. 87-88.

## SUMMARY OF THE ARGUMENT

The search warrant in this case lacks probable cause because there is no evidence in the record that the purported nude pictures identified in the Affidavit were of a pornographic nature, the statement of material fact contained in the Affidavit in support of the search warrant is wholly conclusory, the Affidavit fails to allege sufficient facts to satisfy the requisite time/place nexus requirement, and there is an absence of evidence to properly evaluate the veracity and reliability of the informer.

No good faith exception should apply in this case because of the multitude of false and misleading information contained within the Affidavit, the magistrate abandoned his detached and neutral role when he

11

issued a search warrant based upon this "bare bones" Affidavit, and the Affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause. As a result, a reasonably well trained officer would have known this search was illegal despite the magistrate's authorization.

## ARGUMENT

> The District Court Erred When it Refused to Grant the Defendant's Motion to Suppress Evidence Seized Pursuant to a Search Warrant That Lacked Probable Cause and No Good Faith Exception Existed.

## STANDARD OF REVIEW

This court reviews the factual findings underlying the denial of a motion to suppress for clear error and its legal conclusions de novo. *United States v. Johnson*, 400 F.3d 187, 193 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 134 (2005). Evidence is construed in the light most favorable to the prevailing party below. *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998). In reviewing a district court's ruling on a motion to suppress, this court reviews the district court's findings of historical fact for clear error, "giving due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Humphries*, 372 F.3d 653 (4th Cir. 2004). In good faith, the Appellant maintains that deference should be granted to

the factual findings of the Magistrate Judge, because she – and not Judge Williams – is the one who actually observed the demeanor and testimony of the witnesses who testified during the suppression hearing.

**ANALYSIS**

The Appellant, by reference hereto, adopts the analysis, factual findings, and conclusions set forth within the report and recommendation prepared by the Magistrate Judge and dated September 14, 2007. J.A. 254-270. In addition to the legal arguments and analysis as set forth in the Magistrate Judge's report and recommendation, the Appellant respectfully submits the following:

### A.     LACK OF PROBABLE CAUSE

The Fourth Amendment to the Constitution of the United States guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In accord with the Fourth Amendment, a search warrant must be supported by probable cause. *United States v. Harris*, 403 U.S. 573, 577, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971). The Supreme Court has described the

"probable cause" required to authorize a search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The Supreme Court has adopted a "totality-of-the-circumstances" test to determine whether probable cause supported the issuance of a search warrant. *Gates*, 462 U.S. at 238. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S. Ct. 1970, 56 L. Ed. 2d 525 (1978).

The only arguable material fact set forth within the Affidavit in this case provided to the State Court Magistrate to justify issuance of a search warrant for child pornography at Doyle's home is contained within Paragraph No. 4 of the Affidavit which states:

> "One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children."

There is absolutely nothing within the Affidavit or that was otherwise orally communicated to the Magistrate to find probable cause that the purported "pictures of nude children" were of a pornographic nature. See *e.g., United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) ("Nudity alone does not fit this description [of 'lascivious exhibition of the genitals or

14

pubic area']; there must be an 'exhibition' of the genital area and this exhibition must be 'lascivious.'"); *United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) (stating that § 2252(a)(4)(B) "requires more than mere nudity") (citations omitted); *United States v. Knox*, 32 F.3d 733, 750 (3d Cir. 1994) ("[N]udity alone is insufficient to constitute a *lascivious* exhibition. No one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws.").  The Supreme Court has stated that "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement … failed to meet this requirement."  *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  Similarly, the conclusory statement of facts contained within the Affidavit in this case is insufficient to support a finding of probable cause.

A valid search warrant must also establish a sufficient nexus between the criminal conduct, the items to be seized and the place to be searched. *See United States v. Lalor*, 996 F.2d 1578, 1582-83 (4th Cir. 1993). Also, "residential searches have been upheld only where some information links the criminal activity to the defendant's residence."  *Lalor*, 996 F.2d at 1583. In this case, there is nothing contained within the affidavit or that was

15

otherwise communicated to the Magistrate to sufficiently establish the requisite nexus between the alleged criminal conduct (possession of child pornography) and Doyle's home, or more particularly, the hard drive of the seized computer.

In reference to the nexus of time, the Supreme Court held "[i]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 77 L. Ed. 260 (1932). This Court has also recognized that "[t]here is no question that time is a crucial element of probable cause." *United States v. McCall*, 740 F.2d, 1331, 1335 (4th Cir. 1984). There are a host of cases that discount the nexus of time requirement when considering allegations of child pornography, however, the record in this case is absolutely void of any information as to when or where Doyle is alleged to have shown the victim pictures of nude children.

An "Uncle" is identified as the informer in this case who received information from a victim and such information is alleged within the Affidavit as the material facts constituting probable cause. J.A. 253c. It is recognized that probable cause may be established through hearsay information from a reliable informant. *See United States v. Ventresca*, 380

U.S. 102, 108-09, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *Draper v. United States*, 358 U.S. 307, 312-13, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). In determining whether hearsay information rises to the level of probable cause, two factors should be considered, namely, the informant's "veracity" or "reliability" and his or her "basis of knowledge." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The Affidavit here is void of any information to determine the veracity or the reliability of the "Uncle."

In consideration of the above, there was no probable cause to support the issuance of a search warrant for Doyle's home or the hard drive to the seized computer.

## B.    NO GOOD FAITH EXCEPTION

The "bare bones" affidavit provided to the State Court Magistrate is so lacking of information that the Magistrate was merely acting as a "rubber stamp" when he issued a search warrant in this case. As a result, the good faith exception would not be applicable under these circumstances. *See*, *United States v. Wilhelm*, 80 F.3d 116 (4th Cir. 1996).

In the matter of *United States v. Kemper*, 375 F. Supp. 2d 551 (E.D. Ky. 2005), it was determined that the search warrant was invalid because it failed to allege sufficient facts to establish the requisite nexus between the

criminal activity and the place to be searched.  The Court also held that it cannot consider the unsworn statements given by the investigating officer to the Judge that issued the search warrant for a good faith exception analysis on the grounds that *United States v. Laughton*, 409 F.3d 744 (6th Cir. Mich. 2005) "[c]onfirms that unsworn statements may not be used to supplement either probable cause affidavits or a good faith exception to the exclusionary rule."  *Kemper*, 375 F. Supp. at 554.  Likewise, this Court should not consider the unsworn statement given by Rouse to the State Magistrate at the time the search warrant was issued.  This is especially true because Captain Scott is the officer who was placed under oath by the State Magistrate, signed the Affidavit, and executed the search warrant.  Captain Scott also knew that a magistrate could not rely on unsworn testimony in determining whether probable cause existed to issue a search warrant, acknowledged that the only sworn testimony was that which is contained within the four corners of the Affidavit, and acknowledged that Rouse was not placed under oath when Rouse made comments to the magistrate.  J.A. 135-138.  To that end, it is illogical to conclude that Captain Scott relied upon unsworn information that was told to the State Magistrate when he knew that the Magistrate could only consider sworn testimony.

18

In *United States v. Leon*, 468 U. S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), the Supreme Court held that the exclusionary rule does not prohibit the admission of evidence gained by officers acting in objectively reasonable reliance on a warrant later to be determined invalid. *Id.* at 913. The Supreme Court in *Leon* set forth four situations in which an officer's reliance upon such a warrant would not be reasonable: (1) When the warrant is based on affidavit containing knowing or reckless falsity; (2) When the Magistrate simply acts as a rubber stamp for the police; (3) When the affidavit does not provide the Magistrate with a substantial basis for determining the existence of probable cause; and (4) When the warrant is so facially deficient that an officer should not reasonably rely on it. See *Leon* 468 U. S. at 923.

> **(1) THE MAGISTRATE WAS MISLED BY INFORMATION IN AN AFFIDAVIT THAT THE OFFICER KNEW WAS FALSE OR WOULD HAVE KNOWN WAS FALSE EXCEPT FOR THE OFFICER'S RECKLESS DISREGARD FOR THE TRUTH.**

The affidavit executed by Captain Scott is riddled with false and misleading information.

Under Paragraph 4 of the affidavit which sets forth "the material facts constituting probable cause that the search should be made are:

> "Three minor children have come forward and stated that Robert Doyle, Jr. has sexually assaulted them at the Doyle residence. One victims [sic] disclosed to an Uncle that Doyle has shown the victim pictures of nude children."

The above information is false in that only two minor children have made allegations that they were sexually assaulted by the defendant. J.A. 105. The affidavit falsely alleges that "one victims [sic] disclosed to an Uncle" as opposed to truthfully identifying the individual as being the Step-Uncle of the victim. J.A. 102.

Under Paragraph 7 of the affidavit, Captain Scott acknowledges that he was not advised of any facts set forth within the affidavit by an informer. J.A. 133. To that extent, the information set forth within Paragraph No. 7 is false when it states, "I was advised of the facts set forth in this affidavit in whole or in part, by an informer."

The additional statement contained within Paragraph No. 7 of the affidavit states:

> "Detailed victim statements of the assault and of the Doyle residence, where victims describe the assailants [sic] bedroom and vehicle he drives and description of the home."

20

The above statement is false in that only one victim as opposed to multiple victims described Doyle's bedroom.  J.A. 105.

The Affidavit read as a whole is misleading in that Paragraph No. 7 implies that the informers were the victims identified within Paragraph No. 4 of the affidavit as opposed to the Step-Uncle.  Likewise, the only date(s) communicated to the Magistrate were the August and December 2003 dates provided by the unsworn statement of Investigator Rouse, suggesting that the underlying events were more recent in time.  J.A. 62-63.

It is also misleading for the Affidavit to have not contained a statement that the Victim failed to corroborate the Step-Uncle's statement to Rouse that he had been shown pictures of nude boys when Rouse knew at the time of drafting the affidavit that no child had made any comments about Doyle showing them nude pictures.

When Captain Scott executed the underlying affidavit, he knew the information was false or would have known such information was false except for his reckless disregard of the truth.  Namely, Captain Scott acknowledges that he conducted no independent investigation of the facts underlying this case and relied wholly on the efforts of investigator Rouse.  J.A. 130-134.  Captain Scott further testified that he's not even sure if he read the affidavit prior to its execution.  J.A. 133-134.  The failure of

21

Captain Scott to even review the affidavit prior to execution would constitute a reckless disregard of the truth. Alternatively, had Captain Scott actually read the Affidavit, then he would have known that the information contained within the affidavit was false because of the unsworn representations made by investigator Rouse to the Magistrate.

The false and misleading information contained within the affidavit is relevant and material in that it addresses the material facts alleged to constitute probable cause and the veracity or the reliability of the informant.

### (2)   THE MAGISTRATE WHOLLY ABANDONED HIS DETACHED AND NEUTRAL JUDICIAL ROLE.

In issuing the search warrant at issue in this case, State Court Magistrate Judge Burke simply acted as a "rubber stamp" in approving the "bare bones" affidavit. No information was provided to the Magistrate in the affidavit or otherwise to support any determination that the "pictures of nude children" were of a pornographic nature. Additionally, no information was contained within the affidavit or otherwise communicated to the Magistrate to suggest that pornographic material would be found on the hard drive of the defendant's computer located within the defendant's residence. Rather, the Magistrate simply abandoned his detached and neutral judicial role by issuing a search warrant based upon a "bare bones" affidavit.

22

**(3)    THE WARRANT WAS BASED ON AN AFFIDAVIT THAT WAS SO LACKING INDICIA OF PROBABLE CAUSE AS TO RENDER OFFICIAL BELIEF IN ITS EXISTENCE ENTIRELY UNREASONABLE.**

The Affidavit in this case is exactly that which has been recognized as "bare bones" by this Court.  *See*, *United States v. Wilhelm*, 80 F.3d 116, 121 (4th Cir. 1996) (recognizing that a "bare bones" affidavit is "one that contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause").  Likewise, any unsworn information provided by Investigator Rouse to the Magistrate adds nothing to the creation of probable cause to believe that the alleged "pictures of nude children" were of a pornographic nature and could be found in the hard drive of the defendant's computer located within the defendant's residence.  To that extent, the Affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause and a reasonably well trained officer would have known this search was illegal despite the magistrate's authorization.

For the reasons as hereinabove set forth, the defendant would respectfully maintain that the good faith exception is not applicable under these circumstances.

## CONCLUSION

The Affidavit in this case was not properly supported by probable cause and no good faith exception would apply to prevent application of the exclusionary rule. This Court should therefore reverse the District Court's denial of the suppression motion and remand this case for further proceedings.

## REQUEST FOR ORAL ARGUMENT

The Appellant hereby requests oral argument.

Respectfully Submitted,

Robert Franklin Doyle, Jr., by counsel,

/s/ John E. Jessee

JESSEE & READ, P.C.
200 West Valley Street
P.O. Box 1506
Abingdon, VA 24212
(276) 628-1089
Fax: (276) 628-2411

*Counsel for Appellant*

24

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

     [ X ] this brief contains [*5,099*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

     [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2000*] in [*14pt Times New Roman*]; *or*

     [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>February 4, 2010</u>           <u>/s/ John E. Jessee</u>
                                             *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of February, 2010, I caused this Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jennifer R. Bockhorst
> OFFICE OF THE U.S. ATTORNEY
> 180 West Main Street, Suite B19
> Abingdon, Virginia  24210
> (276) 628-4161
>
> *Counsel for Appellee*

I further certify that on this 4th day of February, 2010, I caused the required number of bound copies of this Brief of Appellant and Joint Appendix to be hand-filed with the Clerk of this Court and one copy of the same to be served, via UPS Ground Transportation, to all case participants, at the above listed address.

/s/ John E. Jessee
*Counsel for Appellant*